UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MCCOY, <br><br> Plaintiff, <br><br> v. <br><br> EMS AUTO REPAIR, et al., <br><br> Defendants. | No. 20 CV 6898 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

John McCoy's longtime employer, EMS Auto Repair, which was part of John W. Daley's ambulance business, agreed to provide McCoy with a pension. McCoy reviewed a $750,000 life insurance policy but signed an agreement for a different life insurance policy worth $1 million dollars. Many years later, EMS fired McCoy. McCoy believes that he is entitled to the cash value of the life insurance policy as his pension and filed this lawsuit against the defendants for violations of ERISA, breach of contract, fraud, and breach of fiduciary duty. For the reasons stated below, the defendants' motion to dismiss is granted.

I.     **Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2), 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). I accept the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Iqbal* at

678–79. I do not accept allegations that are unsupported, conclusory, or legal conclusions. *Id.* At this stage of the case, I may only consider allegations in the complaint, documents attached to the complaint, documents referenced in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

## II. Facts

John McCoy worked as a mechanic for EMS Auto Repair, which was part of John W. Daley's ambulance business. [1] ¶¶ 1, 17–20.[1] After 14 years, McCoy said he needed a pension for retirement, otherwise he would quit. [1] ¶ 2. McCoy's employers agreed to provide one. [1] ¶ 3. McCoy met with the president and co-owner of EMS and a life insurance agent retained by EMS and reviewed a life insurance product. [1] ¶¶ 4–6. According to McCoy, this product was a life insurance policy with a $750,000 death benefit that would fund a pension. [1] at ¶¶ 4–5. Under the policy, when McCoy turned 65, he would receive a $87,000 yearly pension. [1] ¶ 5. McCoy attached a summary or illustration of the policy to his complaint, and it described a $750,000 death benefit that had one payment of $87,000 when he turned 65 and an employer net equity of $328,424 the year before McCoy turned 65. [1-1] at 14, 18.

A few months after the meeting, McCoy and EMS's president and co-owner signed an agreement for a different life insurance policy, with a $1 million value on

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of filings.

McCoy's life, from the same company. [1] ¶ 7; [1-2] at 1, 7.[2] According to McCoy, if the agreement ended, he was entitled to all the proceeds except for the cash value of the policy after the date of execution of the agreement, and that on the date of execution, the policy's cash value was zero. [1] ¶ 8. The attached agreement (described as "informational only") designated EMS as the policy owner and required the company to pay annual premiums. [1-2] at 1. If the policy terminated before McCoy's death, EMS was entitled to the cash value of the policy after the date of execution of the agreement, a refund of premiums paid, minus any debt incurred by EMS against the policy. [1-2] at 2. McCoy and his beneficiaries were entitled to all other proceeds. [1-2] at 2. Upon termination, McCoy had 30 days to purchase EMS's interest in the policy, otherwise EMS became entitled to all the proceeds and the cash surrender value of the policy. [1-2] at 3–4. The agreement also contained a claims procedure in accordance with ERISA but did not name a plan administrator. [1-2] at 4–6. The agreement did not describe other benefits, like the $87,000 annual income payment in the $750,000 policy. *Compare* [1-2], *with* [1-1] at 14.[3]

---

[2] McCoy's claim in his response brief that the defendants considered multiple proposals, only one of which was shown to him, [18] at 5, is not consistent with the allegations in his complaint that he viewed one life insurance policy and then signed another. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745, n. 1 (7th Cir. 2012) (district courts may consider new factual elaborations that are consistent with the plaintiff's factual allegations in the pleadings). The new allegation in McCoy's response brief is disregarded. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (a plaintiff may not amend his complaint by adding new facts in his response brief).

[3] The complaint and attached documents are not consistent with McCoy's new allegation in his response brief that the defendants "determined that monthly payments would be made to the Plaintiff under the [million dollar] policy when he retired." [18] at 5. The allegation is disregarded. *See* above, footnote 2.

3

For approximately 16 years, EMS paid the policy's monthly premiums until the company fired McCoy. [1] ¶¶ 9–10; [1-3]. Daley sent McCoy a letter notifying him that EMS intended to cancel the agreement and asked whether McCoy planned to invoke his right to purchase the policy within 30 days. [1] ¶ 11; [1-4]. EMS said that it owned the cash value of the policy, that the policy did not provide a pension, and that it would not provide McCoy with a copy of the underlying life insurance policy or related documents. [1] ¶¶ 12–13; [1-5]; [1-6]. The life insurance company also refused to provide McCoy with the policy and additional information since he did not have EMS's consent. [1] ¶¶ 14–15. McCoy filed this lawsuit against EMS, Daley, Daley's Medical and Rental Supplies, and Daley's Medical Transport, Inc., alleging two violations of ERISA and three state-law claims: breach of contract, breach of fiduciary duty, and fraud. [1].[4]

## III. Analysis

Defendants argue that this court lacks subject-matter jurisdiction because the life insurance policy was not an ERISA-governed plan. Although this notion of jurisdiction has some support, the modern view is more precise. There's a difference between the power to adjudicate a claim (i.e. a court's subject-matter jurisdiction) and lesser restrictions, like statutory requirements that form the elements of a legal claim. *See e.g. Guerrero v. BNSF Railway Co.*, 929 F.3d 926, 929 (7th Cir. 2019) (citing

---

[4] Based on the defendant's motion to dismiss, the entities Daley's Medical and Rental Supplies and Daley's Medical Transport may not be properly named as defendants. The correct defendant may be called Daley's Medical Rental. [12]; [13]. If McCoy files an amended complaint, he should clarify the defendants and provide some notice as to each defendant's alleged liability for the asserted claims.

4

multiple Supreme Court cases, including *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)). The existence of an ERISA plan is an element of a claim, not a threshold jurisdictional issue. *See Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 521, n.4 (7th Cir. 2016), *overruled on other grounds by Advocate Health Care Network v. Stapleton*, 137 S.Ct. 1652 (2017); *compare NewPage Wisc. Sys. Inc. v. USW*, 651 F.3d 775, 777 (7th Cir. 2011) ("Whether a claim is good differs from the question whether a district court possesses jurisdiction …[a] federal district court is the right forum for a dispute about the meaning of ERISA and the validity of changes to a welfare-benefit plan."), *with UIU Severance Pay Trust Fund v. Local Union No. 18, United Steelworkers of America*, 998 F.2d 509, 510 n.2 (7th Cir. 1993) ("the existence of an 'ERISA-governed plan' is an essential precursor to federal jurisdiction"). Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1), is the applicable rule to test the sufficiency of McCoy's complaint. Furthermore, this case concerns an issue of employee benefits and is not so "insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit" as to deprive this court of subject-matter jurisdiction. *See Oneida Indian Nation of N. Y. State v. Oneida County, New York*, 414 U.S. 661, 666–67 (1974).

Congress enacted ERISA to prevent the misuse of funds and safeguard employee benefits. 29 U.S.C. § 1001. To achieve this goal, the statute governs the administration of employee welfare and pension benefit plans—not the underlying benefits. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 7, 11 (1987); 29 U.S.C. §§ 1002(1)–(3), 1102. Therefore, the statute only applies to plans where the employer

5

exercises financial coordination and control, as well as some discretion, over the benefits. *Fort Halifax*, 482 U.S. at 11–12, 18 (this requirement is also known as an "ongoing administrative scheme"); *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 632–33 (7th Cir. 2001). In contrast, ERISA does not apply to employee benefit plans that only require a mechanical, nondiscretionary application of the plan's terms. *Id.* at 632; *see also Fort Halifax*, 482 U.S. at 12 ("To do little more than write a check hardly constitutes the operation of a benefit plan" that would require federal regulation). It is possible for a one-person agreement to qualify as an ERISA plan. *Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1376 (7th Cir. 1997), *overruled on other grounds by International Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427 (7th Cir. 1998).

The agreement in this case only required EMS to perform nondiscretionary, mechanical acts to administer the benefit. Under the agreement, EMS was entitled to a cash value amount determined by a set formula. *See* [1] ¶¶ 8–10; [1-2] at 1–2. McCoy was entitled to all other proceeds upon death or early termination of the policy. [1-2] at 2. As defined, this benefit is a "one-time, lump-sum payment triggered by a single event" that "requires no administrative scheme whatsoever to meet the employer's obligation." *Fort Halifax*, 482 U.S. at 12. Even if McCoy were entitled to the cash value of the policy, that benefit would still be based on a set formula and would not require EMS to exercise any discretion. Finally, it is not reasonable to infer that the agreement entitled McCoy to monthly income payments (that required EMS to have an ongoing administrative scheme) after retirement. While EMS agreed to

6

provide him with a pension, McCoy's complaint does not allege the terms of any oral agreement and the documents attached to the complaint do not suggest anything other than one lump-sum payment. [1] ¶¶ 2–3; [1-2]. The new allegation about monthly payments in McCoy's response brief was not in his complaint and is disregarded. *See* footnote 3, above. The $750,000 life insurance policy illustration only described a one-time payment of $87,000 when McCoy turned 65 but this was not a term of the signed agreement between the parties. [1-1] at 14; [1-2]. While EMS selected the life insurance agent, owned the policy, and paid monthly premiums, the terms of the agreement are ultimately too simple to establish a plan that required an ongoing administrative scheme. McCoy has not stated a claim to recover benefits under 20 U.S.C. § 1132(a)(1)(B).[5] However, McCoy may be able to correct these deficiencies if he can allege more facts about the financial coordination, control, and discretion EMS exercised over his and/or his colleagues' benefit plans. The ERISA claims are dismissed without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (leave to amend is especially advisable after dismissal of the first complaint).

Because McCoy fails to allege an ERISA plan, I do not reach the other arguments about the adequacy of his pleading. However, if he does file an amended complaint, he will need to allege how the express terms of the agreement or

---

[5] Because the alleged life insurance policy is not an ERISA-governed plan, McCoy's ERISA claim based on interference also fails. In addition, to state a claim under 29 U.S.C. § 1140, the plaintiff must allege the employer's specific intent to interfere with the employee's attainment of benefits. *Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014). McCoy does not allege EMS's specific intent in his complaint. [1].

7

surrounding circumstances 1) entitled him, and not EMS, to the cash value of the policy after the date of execution and 2) prohibited EMS from terminating the policy if McCoy failed to purchase EMS's interest in the policy. Additionally, under ERISA, employers must comply with many reporting and disclosure requirements. *See e.g.* 29 U.S.C. § 1024(b)(4) ("The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description."). To state a violation of these requirements under 29 U.S.C. § 1132(a)(1)(A), McCoy must adequately allege the reporting and disclosure violations he believes EMS committed. For example, he alleges that he requested the life insurance policy and additional information, [1] ¶¶ 14–15; [1-5]; [1-6], but does not allege that he failed to receive pension statements. *See* [1]; 29 U.S.C. § 1025(a).

In the absence of federal claims, district courts should generally relinquish jurisdiction over state-law claims. *Refined Metals Corporation v. NL Industries Inc.*, 937 F.3d 928, 935 (7th Cir. 2019). McCoy's state-law claims for breach of contract, fraud, and breach of fiduciary duty are dismissed without prejudice. To the extent McCoy realleges them in an amended complaint, to survive ERISA preemption, he must allege state-law claims that implicate a legal duty independent of ERISA or the plan terms. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004).

**IV.    Conclusion**

The defendants' motion to dismiss, [12], is granted. McCoy's complaint is dismissed without prejudice. Plaintiff has leave to file an amended complaint by April

8

26, 2021. If an amended complaint is not filed, the dismissal of the federal claims will convert to a dismissal with prejudice and the clerk will enter a final judgment.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 5, 2021